# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| **ANDRE WINGO** | * | **CIVIL ACTION NO.  12-0500** |
| **VERSUS** | * | **JUDGE JAMES T. TRIMBLE, JR.** |
| **LINCOLN PARISH, ET AL.** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

The District Court referred this matter to the undersigned magistrate judge for review and report and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing order(s) of the Court.  For reasons that follow, it is recommended that plaintiff's complaint be **DISMISSED**.

## Background

On February 24, 2012, pro se plaintiff Andre Wingo filed the instant civil rights complaint under 42 U.S.C. § 1983 against Lincoln Parish; Judge Cynthia Woodard of the 3rd Judicial District Court for the Parish of Lincoln, State of Louisiana; and Judge Woodard's law clerk, Fletcher Hyacinth.  (Compl.).  Wingo alleges that on February 7, 2012, he went to the Lincoln Parish Courthouse to file a civil complaint, together with a motion for leave to proceed in forma pauperis ("IFP").  *Id*.  Upon presentation, the Clerk of Court for the 3rd Judicial District Court instructed Wingo to proceed to Judge Woodard's office to obtain approval to proceed IFP. *Id*.  The judge was not in, however; thus, the judge's secretary instructed plaintiff to leave the documents with her, and that the judge would sign the order upon her return.  *Id*.  The next day, plaintiff received a letter from Judge Woodard's law clerk, Fletcher Hyacinth, "rejecting the

Plaintiff's motion without order of the court." *Id*.

Plaintiff contends that Hyacinth and Woodard conspired to deny plaintiff access to the courts by not accepting plaintiff's IFP motion. *Id*. Plaintiff alleges that it is the policy of Lincoln Parish to permit its law clerks to adjudicate motions for leave to proceed IFP. *Id*. Accordingly, he concludes that Hyacinth is a "decision maker" for Lincoln Parish, thereby subjecting the parish to liability. *Id*.

Plaintiff seeks injunctive relief from this court compelling Judge Woodard to rule on his motion for leave to proceed IFP. *Id*. He also seeks an injunction prohibiting law clerks from deciding IFP motions. *Id*. In addition, plaintiff seeks injunctive relief requiring Lincoln Parish to enact a policy requiring its judges to grant or deny IFP motions. *Id*. Finally, plaintiff seeks a total of $100,000,000 in compensatory and punitive damages against defendants. *Id*.

On March 1, 2012, this court granted plaintiff's application to proceed *in forma pauperis* ("IFP"). (March 1, 2012, Order).

<u>**Analysis**</u>

In any case where the court has authorized the plaintiff to proceed IFP, the court, at any time, shall dismiss a defendant against whom the action:  proves patently frivolous or malicious; fails to state a claim upon which relief may be granted; or seeks monetary relief that is barred by a defense of immunity. *See* 28 U.S.C. 1915(e)(2)(B) & (C).  The court may screen the complaint and enter such dismissals, *sua sponte*. *See e.g., Allard v. Quinlan Pest Control Co., Inc.*, 387 Fed. Appx. 433, 440 (5ᵗʰ Cir. July 13, 2010) (unpubl.); *Chapman v. Arlington Housing Authority*, 145 Fed. Appx. 496 (5ᵗʰ Cir. Oct. 12, 2005) (unpubl.).  In so doing, the court may consider affirmative defenses that are apparent from the record. *Ali v. Higgs*, 892 F.2d 438, 440 (5ᵗʰ Cir.

2

1990). The court also is authorized to review a complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), and dismiss sua sponte plaintiff's claims against a defendant on the basis of Eleventh Amendment immunity. *See Thomas v. Texas Dept. of Family and Protective Services*, 427 Fed. Appx. 309 (5th Cir. June 02, 2011) (unpubl.).[1]

I.     **Standards of Review**

       a)     **Subject Matter Jurisdiction**

       "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers local 6 Pension Fund*, 81 F.3d 1182, 1187 (2nd Cir. 1996)). The party seeking to invoke jurisdiction bears the burden of demonstrating its existence. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "[T]here is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996) (citation omitted).

       b)     **Failure to State a Claim Upon Which Relief Can Be Granted and 42 U.S.C. § 1983**

       The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is

---

       [1] An early determination of the merits of an IFP complaint provides significant benefit to courts (because it permits effective and efficient use of scarce resources), to defendants (because it frees them from the burdens of patently meritless and harassing litigation), and to plaintiffs (because courts will have the time, energy and inclination to give meritorious claims the attention they need and deserve). *See Ali, supra*.

3

entitled to relief . . ."  Fed.R.Civ.P. 8(a)(2).   To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)).   A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between.  *See Iqbal, supra*.   Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.  *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965.   Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions.  *Iqbal, supra*.   A pleading comprised of  "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8.  *Id*.  "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim."  *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 155 (5th Cir. 2010).

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*. (citation omitted).   A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely.  *Twombly, supra*.   Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory.  *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Section 1983 provides that any person who, under color of state law, deprives another of

4

"any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citing 42 U.S.C. § 1983).  Section 1983 does not create any substantive rights, however; it simply provides a remedy for the rights designated therein.  *Id*.  "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983."  *Id*.  (citation omitted).

II.     **Judge Woodard and her Law Clerk are Entitled to Absolute Judicial Immunity from Plaintiff's Claims Asserted Against them in their Individual Capacities**

It is well settled that "[j]udicial officers are entitled to absolute immunity from claims for damages arising out of acts performed in the exercise of their judicial discretion." *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir.1994); *see also Krueger v. Reimer*, 66 F.3d 75, 76-77 (5th Cir.1995) (*per curiam*); *Graves v. Hampton*, 1 F.3d 315, 317 (5th Cir.1993), abrogated on other grounds by *Arvie v. Broussard*, 42 F.3d 249 (5th Cir.1994).  "A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." *Stump v. Sparkman*, 435 U.S. 349, 359, 98 S.Ct. 1099, 1106 (1978); *Brandley v. Keeshan*, 64 F.3d 196, 200-201 (5th Cir.1995), *cert. denied*, 516 U.S. 1129 (1996).  Judicial immunity is an immunity from suit and not just from the ultimate assessment of damages. *Mireles v. Waco*, 502 U.S. 9, 11, 112 S.Ct. 286 (1991).  "Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Id.* at 10, 112 S.Ct. 286 (citation omitted).

Judicial immunity is a matter of policy and is necessary because, as aptly demonstrated by the case *sub judice*, a judge  ". . . should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption [and] [i]mposing such a burden on judges would contribute not to principled and fearless decision making but to intimidation." *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 1218 (1967).  Consequently, judicial immunity cannot be overcome even by allegations of bad faith or malice; such immunity "applies even when the judge is accused of acting <u>maliciously and corruptly</u>." *Id.* at 11, 112 S.Ct. 286 (internal quotation marks and citation omitted).  Indeed, judicial immunity applies even if the judge's challenged actions deprived a criminal defendant of due process.  *See Price v. Porter*, 351 Fed. Appx. 925 (5th Cir. Nov. 2, 2009) (unpubl.) (citing supporting cases).  In determining whether a judge is entitled to immunity, "[i]t is the Judge's actions alone, not intent, that we must consider." *Malina v. Gonzales*, 994 F.2d 1121, 1125 (5th Cir.1993).

Judicial immunity can only be defeated by showing that the judge's actions were of a non-judicial nature or that he acted in the complete absence of jurisdiction.  *Mireles*, 502 U.S. at 11-12, 112 S.Ct. at 288.  Courts use the "functional" approach in deciding whether an act is judicial for purposes of immunity.  *Cleavinger v. Saxner*, 474 U.S. 193, 201-02, 106 S.Ct. 496 (1985).  The issue of "immunity analysis rests on the status of the defendant.  Absolute immunity flows not from rank or title or 'location within the Government,' but from the nature of the responsibilities of the individual official." *Id.*  In deciding whether absolute judicial immunity applies, a court should consider the nature of the act taken, namely whether it is a function normally performed by a judge, and the expectations of the parties, i.e., whether they dealt with the judge in her judicial capacity.  *Stump*, 435 U.S. at 362.

6

In determining whether the complained of actions were non-judicial in nature, that is to say, whether the judge acted outside the scope of his judicial capacity, the court should consider a variety of  factors:  (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers;  (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in her official capacity.  *Malina*, 994 F.2d at 1124 (citation omitted).  These factors must be broadly construed in favor of immunity. *Id.*

Plaintiff acknowledges that judges ordinarily enjoy absolute immunity for actions taken in their judicial capacity.  *See* Compl., ¶ 18.  Thus, in an effort to circumvent this immunity, plaintiff characterizes Judge Woodard's approval of her law clerk's handling of plaintiff's IFP application as an administrative act taken outside the scope her judicial capacity.  *Id*.  However, plaintiff's  unsupported, conclusory assertion that Judge Woodard acted in an "administrative" capacity is unavailing.  *Burns v. Mayes*, 369 Fed. Appx. 526, 530 (5th Cir. Feb. 8, 2010) (unpubl.) (citation omitted).  Indeed, it is manifest that Judge Woodard was overseeing a normal judicial function (the handling of IFP motions); the act likely occurred in the judge's chambers; the controversy centered around a case pending before the court; and the act arose out of plaintiff's visit to the judge's chambers, to see her in her official capacity.  *See Malina, supra*.

Broadly construing the relevant factors, the undersigned readily concludes that Judge Woodard is entitled to judicial immunity from plaintiff's claims against her in her individual capacity.  *See Hosseini v. Sharp*, 216 Fed. Appx. 392 (5th Cir. Oct. 24, 2006) (judge did not lose immunity by discussing proceedings with litigant in chambers); *Tatum v. Giarruso*, 347 F. Supp.

2d 324 (E. D. La. 2004) (judge entitled to immunity where all four factors pointed to conclusion that she was acting in her judicial capacity); *Mireles supra* (judge entitled to immunity when he ordered police officers to bring an attorney before the judge); *Von Drake v. Liberty Mut. Auto. Ins. Co.*, 2006 WL 1075244 (E.D. Tex. Apr. 21, 2006) (judge entitled to judicial immunity where, inter alia, he refused to act on plaintiff's motions, and directed the court's clerks not accept any new filings from plaintiff).

Further, a "judge's law clerk, when assisting the judge in carrying out the former's judicial functions, is likewise entitled to absolute immunity." *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991). Here, there is no question but that Hyacinth was assisting the judge in carrying out her judicial functions. In fact, plaintiff alleges that Hyacinth impermissibly usurped the role of the judge. Moreover, the law clerk acted with the judge's approval. (Compl., ¶¶ 12 & 18). Under these circumstances, Hyacinth enjoys absolute immunity from claims against him in his individual capacity.

. **III. Plaintiff's Official Capacity Claims Against Judge Woodard are Subject to Dismissal Pursuant to the Eleventh Amendment for Lack of Subject Matter Jurisdiction**

Insofar as plaintiff sued Judge Woodard in her official capacity, it is manifest that official capacity suits, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985) (citing, *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55 (1978)). Thus, "an official-capacity suit is, in all respects other than

name, to be treated as a suit against the entity."  *Id*.[2]

As state court judges are agents or officers of the State of Louisiana, claims against them in their official capacity are barred by the Eleventh Amendment.  *See Waldrop v. Bethancourt*, 2010 WL 3312501 (E.D. La. July 21, 2010); *Whittington v. Maxwell*, 2009 WL 1651535 (W.D. La. June 10, 2009); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 1212 (1989); and *Thomas v. Texas Dept. of Family and Protective  Thomas v. Texas Dept. of Family and Protective Services*, 2011 WL 2161909 (5th Cir. June 2, 2011) (unpubl.) (citations omitted). Accordingly, the court lacks jurisdiction to entertain plaintiff's action against Judge Woodard in her official capacity.[3]

## IV.    Plaintiff Fails to State a Claim against Lincoln Parish

Municipalities and local government units are persons subject to liability under § 1983. *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 690, 98 S. Ct. 2018, 2035, (1978).  Therefore, local governing bodies "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, . . . the action that is alleged to be unconstitutional

---

[2]  Plaintiff alleges that Hyacinth was a "decision maker" for Lincoln Parish.  (Compl. ¶ 20).  Therefore, plaintiff's official capacity claims against Hyacinth are subsumed within the court's discussion of Jackson Parish's liability, *infra*.

[3]  It is well settled that
[t]he Eleventh Amendment to the United States Constitution bars suits in federal court by citizens of a state against their own state or a state agency or department. Claims under federal statutes do not override the Eleventh Amendment bar unless there is a clear showing of congressional intent to abrogate the bar. Section 1983 does not override the Eleventh Amendment bar.

*Darlak v. Bobear*,  814 F.2d 1055, 1059 (5th Cir. 1987) (citation omitted).
The Eleventh Amendment bars suits for both money damages and injunctive relief against a state entity.  *Id*.  It also precludes state law claims brought against the State and its departments (in federal court).  *Richardson v. Southern University*,  118 F.3d 450, 453 (5th Cir. 1997).

implements or executes a policy statement, ordinance, regulation, or decision officially adopted

and promulgated by that body's officers." *Id*.  A local governing body, however, cannot be held

liable on the basis of *respondeat superior*.  *Id*.  Rather, plaintiff must demonstrate that the local

government entity had an official policy (or custom) which was a "moving force" behind a

constitutional violation that a "policy maker" of the local government entity knew of, or must

have known about.  *See Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (citation

omitted).

> An official policy contemplates,

> 1.    A policy statement, ordinance, regulation, or decision that is
>       officially adopted and promulgated by the [government entity] ... or
>       by an official to whom the [entity] ha[s] delegated policy-making
>       authority; or

> 2.    A persistent, widespread practice of ... officials or employees,
>       which, although not authorized by officially adopted and
>       promulgated policy, is so common and well settled as to constitute
>       a custom that fairly represents [the entity's] policy.

> A plaintiff may also establish a custom or policy based on an isolated decision
> made in the context of a particular situation if the decision was made by an
> authorized policymaker in whom final authority rested regarding the action
> ordered.

*Cozzo v. Tangipahoa Parish Council--President Gov't*, 279 F.3d 273, 289 (5th Cir. 2002)

In the instant case, plaintiff contends that Lincoln Parish has policies permitting:  1) its

law clerks to grant or deny motions for leave to proceed IFP; and 2) its judges to "violate judicial

policy" by not ruling on motions for leave to proceed IFP.  (Compl., ¶¶ 20-21).  Even if this these

practices transgress plaintiff's constitutional rights – an issue that this court need not, and does

not reach – plaintiff has not alleged facts to establish that this practice is an "official policy" or

custom of Jackson Parish.  Rather, plaintiff's complaint establishes that he encountered this

procedure on *one* occasion, by *one* judge and her law clerk.

In an effort to overcome the complete absence of any *factual* allegations demonstrating that Jackson Parish had an official policy or custom regarding the IFP practices at issue here, plaintiff contends that Judge Woodard's law clerk was a "decision maker," i.e., an "authorized policymaker" who enjoyed final authority to bind the parish and subject it to § 1983 liability.  *See* Compl., ¶ 20.  However, the Fifth Circuit has repeatedly held that "[a] local judge acting in his or her judicial capacity is not considered a local government official whose actions are attributable to the county."  *Cunningham ex rel. Cunningham v. City of West Point Miss.*, 380 Fed. Appx. 419, 421-422 (5th Cir. June 7, 2010) (unpubl.) (citing *Krueger v. Reimer*, 66 F.3d 75, 77 (5th Cir. 1995).  If a local judge is not a policy maker for a county or parish, then *a fortiori*, a judge's law clerk is not a policy maker.

As instructed by *Iqbal*, the court accords no weight to plaintiff's conclusory allegations in his complaint.  *See Iqbal, supra*.  Plaintiff's remaining allegations contain no facts sufficient to confer plausibility upon his claim for local governing body liability under § 1983.  *Id.*; *see also City of Clinton, Ark., supra*.

## V.    Claims for Injunctive Relief

The court notes that "judicial immunity does not bar claims for injunctive or declaratory relief in civil rights actions."  *Johnson v. Bigelow*, 239 F. App'x 865, 865 (5th Cir. April 17, 2007) (unpubl.) (citing *Holloway v. Walker*, 765 F.2d 517, 525 (5th Cir.1985)).  Nonetheless, federal courts do not enjoy the authority to direct state courts or their judicial officers in the performance of their duties.  *Johnson, supra* (citation omitted).

11

**VI.      Amendment**

Generally, the court should not dismiss a pro se complaint without affording the plaintiff an opportunity to amend his complaint.  *Ybarra v. Meador*, 427 Fed. Appx. 325, 326 (5th Cir. June 3, 2011) (unpubl.) (citation omitted).  Thus, to the extent that plaintiff harbors a *good faith* basis to redress, via amendment, the proposed grounds for dismissal set forth herein, he should promptly effect same.

<u>Conclusion</u>

For the foregoing reasons,

**IT IS RECOMMENDED** that judgment be rendered in favor of defendants, Lincoln Parish and Fletcher Hyacinth, dismissing, with prejudice, plaintiff's complaint against them. Fed.R.Civ.P. 12(b)(6).

**IT IS FURTHER RECOMMENDED** that plaintiff's official capacity claims against defendant, Judge Cynthia Woodard, be DISMISSED, without prejudice, for lack of subject matter jurisdiction.  Fed.R.Civ.P. 12(b)(1).

**IT IS FURTHER RECOMMENDED** that plaintiff's individual capacity claims against Judge Cynthia Woodard be DISMISSED, with prejudice.  Fed.R.Civ.P. 12(b)(6).

Finally, the recommended dismissals are subject to plaintiff's right to amend his complaint to cure, *provided he has a good faith basis for doing so*, the legally deficient allegations against defendants, within the deadline to file objections to this report and recommendation.  *See* below.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written

12

objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 1st day of May 2012.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE